UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WIGS FOR KIDS,INC.,                          Case No. 17-11471

        Plaintiff,                       Honorable Nancy G. Edmunds

v.

WIGS 4 KIDS OF MICHIGAN, INC.
d/b/a WIGS 4 KIDS WELLNESS CENTER
& SALON, et al.,

        Defendants.
_____/

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS [19]

Plaintiff, Wigs for Kids, Inc., filed a four-count complaint against Defendant alleging (1) federal trademark infringement under 15 U.S.C. §1114 of the Lanham Act; (2) federal unfair competition under 15 U.S.C. §1125(a) of the Lanham Act; (3) trademark infringement and unfair competition under Michigan common law; and (4) unfair and deceptive trade practices under MCL §445.901-922 of the Michigan Consumer Protection Act. Defendant, Wigs 4 Kids of Michigan , Inc., moves to dismiss the complaint for failure to state a claim upon which relief can be granted.

**I.    Facts**

A. Plaintiff's Complaint

In deciding motions for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c), the Court looks to the face of the complaint and any supporting exhibits for the facts upon which to evaluate the motion. The following are the facts as alleged in Plaintiff's Complaint.

Plaintiff is a non-profit charitable organization that incorporated on October 19, 1993, in Ohio. Plaintiff operates nationally under the name Wigs For Kids, Inc, a name Plaintiff has used continuously since 1993. The organization collects monetary and hair donations in order to create custom-made real hair wigs for children suffering from hair loss, at no cost to them. Plaintiff reports helping 125-150 children annually.

Defendant, independent of Plaintiff, incorporated under the same name in the State of Michigan almost a decade later. On December 15, 2003, only a couple months after the original filing, Defendant amended their filling to change names from Wigs For Kids, Inc., to Wigs 4 Kids of Michigan, Inc., and has used the name "Wigs 4 Kids" continuously since December 2003. Defendants' Michigan based non-profit works to provide free wigs to children suffering from hair loss due to cancer, or other disease/illness. (Pl. Complaint, Dkt. 1 at 4.) Defendant claims to provide wigs to approximately 300 children in Michigan each year. (D. Mtn. to Dismiss, Dkt. 19, at 11.)

In 2004, Plaintiff contacted Defendants requesting they change their name because of the similarity and likelihood of confusion between the two names. Defendants responded they would not change their name but were prepared to confine their operations to within the State of Michigan. (Pl. Complaint, Dkt. 1 at 4.) No further action was taken at that time. Then in September 2012, the similarity in the companies' two names caused actual confusion between the companies when a potential donor for Plaintiff, inadvertently directed a donation, to Defendant. Plaintiff states Plaintiff never recovered the sizable donation after the misdirection.

The most recent confusion arose in February 2016. Oxnard Cats Entertainment LLC ("Oxnard") contacted Plaintiff about filming a segment for a television production of "Total

Divas." (Pl. Complaint, Dkt. 1, at 6.) Oxnard planned to film Daniel Bryan ("Bryan") a retiring WWE Wrestling Association wrestler as he cut and donated his 'famous' hair to Plaintiff. Bryan did have his hair cut, and Oxnard did record it.

Plaintiff asserts Defendant then gave an interview to Ryan Satin ("Satin") the founder and editor in chief of the blog "Pro Wrestling Sheet" about the donation. Plaintiff asserts Defendants misrepresented that Defendants were the recipients of Bryan's hair. This led to a cascade of blogs and websites picking up the story including Wikipedia.org, reporting in error Defendant received Bryan's hair and not mentioning Plaintiff.

On March 28, 2016, Plaintiff, through counsel, sent a cease and desist letter demanding that Defendants "no longer use the trade name or trademark 'Wigs 4 Kids' or any variation." (Dkt. 1-10, at 2.) Plaintiff states "Defendants refused to halt the use and promotion of their infringing Service Mark in connection with the identical goods and services, and continues to solicit donations, offer, advertise, promote such goods and services under their Service Mark as of the date of filing of this Complaint (as shown in Exhibit I)." (Pl. Complaint ¶37, Dkt. 1, at 7.) Exhibit I shows a single page screen-shot of the Defendants' website. Notably in large letters in the center of the screen the site states "We gratefully accept hair donations from around the world!" (Dkt. 1-11, at 1.)

B. Registered Marks.

Concurrent with these events both Plaintiff and Defendant have sought to register their name and trademarks in different arenas and at varied times. In April 1999, before Defendant came into existence, Plaintiff received a United States Service Mark Registration 2,238,775 for the name "WIGS FOR KIDS" and design in International Class 40 which was active until January 2006, a logo trademark.

In February 2004, Defendants unsuccessfully filed an application for the name "Wigs 4 Kids, Helping the Self-Esteem of Children" and design in International Class 35, however after failing to adequately reply to the United States Service Mark Office in December 2004, the application was abandoned in July 2005.

Also in February 2004, Plaintiff applied again to trademark its logo. In January 2007 Plaintiff finally received the United States Trademark Registration 3,197,277 for the name and design for "WIGS FOR KIDS" in International Class 26, a logo trademark. This trademark became incontestable pursuant to 15 U.S.C. § 1065 on February 24, 2012.

A month after Plaintiff received the trademark registration, Defendants filed in February 2007, United State Trademark Application for the name "Wigs 4 Kids Helping the Self-Esteem of Children 1-587-772-6656" and design in International Class 26. The United States Patent and Trademark Office rejected this application on the basis of likelihood of confusion with Plaintiff's already registered marks. Defendant failed to respond to an office action in June 2007 and Defendant officially abandoned the application in January 2008.

In August 2007, Defendants registered in the State of Michigan the service mark #M07651 "Wigs 4 Kids" listing October 2003 as the date of first use in Michigan and the United States.

In 2010, Defendant filed Certificates of Assumed Names with the Michigan Department of Licensing and Regulatory Affairs for the name "Wigs 4 Kids Wellness Center & Salon and Wigs for Kids Solon." Defendant renewed the filing in 2015. (Dkt. 19, at 12.)

Shortly after the press mix up with Bryan, Plaintiff filed in March 2016 for a standard character mark. In October 2016 Plaintiff received United States Trademark Registration 5,063,365 for "WIGS FOR KIDS" standard character mark in International Class 26.

C.  Defendant's Motion to Dismiss

Defendant has filed its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c) contending its use of "Wigs 4 Kids" does not infringe but is allowable due to prior use, genericness, unclean hands, and that the complaint is time-barred.  Defendant claims because Plaintiff has knowingly co-existed with Defendant for the last fourteen years, Plaintiff should not be permitted to proceed with any of its claims.

## II.   Legal Standard

Through its present motion, Defendant seeks dismissal of each of the claims asserted in Plaintiff's complaint under Fed. R. Civ. P. 12(c), motion for judgment on the pleadings. Such motions are reviewed under the same standard as a motion to dismiss, Fed. R. Civ. P. 12(b)(6).  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

When determining whether Plaintiff's claims are subject to dismissal under Rule 12(b)(6) the complaint is reviewed for failure to state a claim, the Court must construe the complaint in a light most favorable to Plaintiff and accept all well-pleaded factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Courts are not required to accept as true legal conclusions couched as factual allegations. *Id.* Factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

The Supreme Court has emphasized that this plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679, 129 S. Ct. at 1950 (internal quotation marks, alteration, and citation omitted). If a plaintiff does "not nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

## III. Analysis

Plaintiff's complaint centers around the fact they hold the federally registered trademark for "Wigs For Kids" and Defendants' alleged infringement on that mark. Defendants acknowledge Plaintiff currently holds a registered trademark but asserts, in this instance, an infringement never occurred. Under the Lanham Act, registration of a trademark is prima facie evidence of the registrant's exclusive right to the mark. 15 U.S.C.

§1115(a); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). Nonetheless, Defendant argues, a series of affirmative defenses as support of Defendant's motion to dismiss including, prior use, genericness, unclean hands, and that the complaint is time-barred.

### A. Affirmative Defenses

Where "an affirmative defense is raised in a motion to dismiss, the test is whether the complaint includes allegations of fact that effectively vitiate the ability to recover." *Basile v. Merrill Lynch*, 551 F. Supp. 580, 591 (S.D.Ohio 1982). "While dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, dismissal is also proper if the complaint fails to allege an element necessary for relief or if an affirmative defense or other bar to relief is apparent from the face of the complaint." *United States Sec. & Exch. Comm'n v. Ackman*, No. 13-12520, 2015 WL 13039637, at *10 (E.D. Mich. May 12, 2015)(J. Edmunds)(internal quotation marks, alteration, and citations omitted). A 12(b) motion to dismiss based upon an affirmative defense can be granted only where the defense appears clearly on the face of the complaint. *Basile*, 551 F. Supp. at 591.

### 1. Prior Use

Federal registration of a trademark is prima facie evidence of the mark's validity and of the registrant's exclusive ownership of and right to use the mark. 15 U.S.C. § 1057(b). However, federal registration does not preclude an alleged infringer from providing any legal or equitable defense that might have been asserted prior to registration. 15 U.S.C. § 1115(a). One such defense is continuous, good-faith prior use. The Lanham Act, 15 U.S.C. § 1115(b)(5) provides for a prior-use defense to an infringement claim where:

> [T]he mark whose use by a party is charged as an infringement was
> adopted without knowledge of the registrant's prior use and has been
> continuously used by such party or those in privity with him from a date
> prior to (A) the date of constructive use of the mark established pursuant
> to section 1057(c) of this title, (B) the registration of the mark under this
> chapter if the application for registration is filed before the effective date
> of the Trademark Law Revision Act of 1988, or (C) publication of the
> registered mark under subsection c of section 1062 of this title: Provided
> however, that this defense or defect shall apply only for the area in
> which such continuous prior use is proved.

15 U.S.C. § 1115(b)(5). A party charged with infringement will not be liable if it proves it

adopted and continuously used the mark prior to its registration without knowledge of the

registrant's prior use. *Id.* When true, the non-registrant is permitted to use the mark free

from interference within the area in which it continuously and in good faith used the mark

prior to its registration. *Id.*

It is undisputed that Plaintiff obtained federal registration for the "Wigs For Kids" mark.

With it, Plaintiff, acquired presumptively exclusive nationwide trademark rights to the "Wigs

For Kids" mark as of the date of registration, except against those with pre-existing

common law rights to the mark. Defendant claims it has such a common law right in the

state of Michigan.

The basic rule governing common law trademark ownership is priority of use. *See

United Drug Co. v. Theodore Rectamus Co.*, 248 U.S. 90, 100 (1918). Ownership of

service marks is obtained by actual use. *Allard Enterprises v. Advanced Programming

Resources, Inc.*, 249 F.3d 564, 571 (6th Cir. 2001)(citation omitted). "The first to use a

mark in the sale of goods or services is the 'senior user' of the mark and gains common law

rights to the mark in the geographic area in which the mark is used." *Id.* at 572. Rights to

an unregistered trademark reach only to territory in which the mark is known and

recognized. *Hanover Star Milling CO. v. Metcalf*, 240 U.S. 403, 415-16 (1916)(the *Tea-Rose* case).

It is undisputed that Plaintiff first adopted and began using the "Wigs for Kids" mark a decade before Defendant and is therefore the senior user. A senior user cannot prevent the use of a similar mark by a good-faith, junior user if the junior use was the first to use the mark in a location remote from the senior user's territory. Where a senior user enters a remote market, they do so subject to the trademark rights already acquired, in good faith, by another user. *See Rectanus*, 248 U.S. 90; *Hanover Star*, 240 U.S. 403. This is known as the *Tea-Rose / Rectanus* doctrine and governs territorial rights in unregistered trademarks and permits a junior user to enjoin a senior user's infringing use "in an area where the senior user has no established trade, and hence no reputation and no good will." *Natural Footwear*, 760 F.2d at 1392.

Central to the *Tea Rose-Rectanus* doctrine is that the remote junior user's adoption and use of the contested mark be (1) in good faith and (2) in a remote area. A senior user may assert superior rights against an innocent junior user only in areas where the senior user has developed a reputation, but may assert superior rights as against a non-innocent junior user regardless of the area in which the junior user employs the mark.

There appears to be a genuine factual dispute over whether or to what extent Plaintiff's mark may be limited by Defendant's common law right, if at all. Plaintiff's complaint avers that as early as December 2003, Defendant began to use the "Wigs 4 Kids of Michigan" name, but this is well after Plaintiff's start in 1999, when Plaintiff already held a registered logo trademark. As pled, Plaintiff's complaint asserts Defendant had at least constructive knowledge of Plaintiff's name within months of its formation. Whether

Defendant adopted the name in good faith therefore is not sufficiently addressed in the facts available. Plaintiff's complaint further asserts that as early as 2004, Plaintiff contacted Defendant and thus knew of Defendant's usage of the similar name. What is not clear at all on the face of the complaint or the attached documents is the territorial reach of Plaintiff's rights to use the mark at the time Defendant began, nor the remoteness of the geographical area (if any) which Defendant occupied. If Plaintiff's territory is determined to have been limited, than a more detailed determination of the territorial reach of Defendant's activities is necessary to determine the extent of Defendant's claimed common law rights to use the mark. The facts available do not allow this Court to determine what common law rights if any Defendant held prior to Plaintiff's registering the federal trademark.

### 2. Genericness

A trademark infringement claim under the Lanham Act has three elements, including whether the use of the challenged mark is likely to cause confusion among consumers. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). However a court will not reach this element at all until persuaded that the mark is sufficiently distinctive to warrant protection as a trademark. Courts considering whether a mark is sufficiently distinctive to warrant trademark protection evaluate the mark based on a hierarchy of classifications with increasing distinctiveness: (1) generic; (2) descriptive (3) suggestive; (4) arbitrary; or (5) fanciful. "Suggestive, arbitrary and fanciful marks are inherently distinctive and are protectable so long as the putative owner has actually used the mark. Merely descriptive marks are not inherently distinctive, but can become protectable by developing a secondary meaning. Generic marks, on the other hand,

receive no protection. " *Trumblebus Inc. v. Cranmer*, 399 F.3d 754, 761-62 (6th Cir. 2005). If the mark is generic "no incontestable rights shall be acquired." 15 U.S.C. §1065(4).

Defendant argues that Plaintiff's registered trademark is generic and not capable of distinction - that "Wigs for Kids" is primarily a descriptive term, identifies a type of product/service the parties provide and does not designate the source company / producer of the wigs. As such, Defendant claims Plaintiff's mark is not due protection. Plaintiff responds that the fact they hold a federal registered trademark constitutes a presumption against genericness.

In the Sixth Circuit, "the test for whether a term is generic and therefore ineligible for trademark protection is 'whether the public perceives the term primarily as the designation of the article.' " *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633-34 (6th Cir. 2012)(citing *Gen. COnference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 413 (6th Cir. 2010)). "If a mark is primarily associated with a type of product rather than with the producer, it is generic." *Nartron Corp.*, 305 F.3d at 404.

The mark at issue, "Wigs for Kids" is a descriptive term. The company provides real hair wigs for children just as the name describes. The question the Court will be tasked with resolving when ruling on the merits of this case, then, is whether the mark is a "merely descriptive" term, in which case, as a registered trademark it is entitled to protection, or a "common descriptive" term in which case it is generic, and its registration may be subject to cancellation.

Whether to classify a particular mark as generic, as opposed to descriptive, is a factual determination. The Lanham Act creates the presumption that a plaintiff with a registered trademark does not have a merely descriptive or generic trademark. A

11

defendant may overcome this presumption with proof of descriptiveness or genericness, but the burden is on the defendant to make such a showing. For a motion on the pleadings, the fact that Plaintiff has the registered trademark and with it a presumption against genericness is enough to proceed with the claim. This Court does not reach the issue of whether Defendant's selections from the internet illustrating other uses of similar marks are appropriate evidence to consider for a motion to dismiss, because even with such materials, the presumption of protectability that accompanies the U.S. Patent and Trademark Office approval of the Trademark is not overcome.

### 3. Time-Barred Complaint

Defendant's motion to dismiss includes arguments that the complaint is time-barred, by the doctrine of laches and other applicable statutes of limitations. Defendants argue Plaintiff delayed too long in bringing their infringement claim. Defendants correctly assert that the complaint on its face states Plaintiff knew of Defendants' existence and allegedly infringing activity as early as 2004. The complaint details interactions between the two companies in 2004, 2007, and 2012. (Dkt. 1, at 5-6.) Defendant claims therefore Plaintiff's failure to file this case until 2016 is barred by the doctrine of laches, the claim under the Michigan Consumer Protection Act, is barred by the six year statute of limitations, and the common law infringement claims are barred by Michigan's three-year statute of limitations for tort.

Plaintiff's response to all the time-barred arguments is two fold. First under a theory of progressive encroachment, that Defendant's activities have changed significantly from local in character to national and second, that the damages sought pertain to Defendant's

activities beginning in 2016 and therefore their claims are only a year old and do not trigger any of the time-barred arguments.

Under the Lanham Act, there is no statue of limitations however the Sixth Circuit applies the doctrine of laches to determine if a claim is time-barred. *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006). The Sixth Circuit states that while laches "precludes a plaintiff from recovering damages, it does not bar injunctive relief." *Kellogg Company V. Exxon Corporation*, 209 F.3d 562, 568-69 (6th Cir. 2000). Thus the doctrine would only defend against any claims for damages, not injunctive relief.

The Sixth Circuit has stated that a party arguing under the doctrine of laches requires proof that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, materially prejudiced the alleged infringer. *Id.; Narton Corp. v. STMicroelectronics*, 305 F.3d 397, 408 (6th Cir. 2002). Implicit in a finding of laches for trademark infringement, is the presumption that an underlying claim for infringement existed and that Plaintiff delayed too long. Any delay attributable to Plaintiff must be measured from the time at which Plaintiff knew that the infringement ripened into a provable claim. Plaintiff's response under the doctrine of progressive encroachment provides some latitude in the timing of its bringing a trademark infringement suit, waiting until the likelihood of confusion is severe. It is an offensive countermeasure to Defendant's claim of laches in trademark infringement, and requires the Court perform a fact based likelihood of confusion analysis, based on factors such as whether Defendant has brought itself more squarely into competition with Plaintiff. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 572 (6th Cir. 2000). Such an analysis is fact intensive and cannot be determined on the available facts.

Plaintiff's response to Defendant's time-barred arguments are premised on the following paragraphs in the complaint:

32.    Upon information and belief, Defendant Varney gave an interview to Satin wherein Varney misrepresented that Defendants were the recipient of Bryan's hair and that they were contacted by a producer for "Total Divas".

33.    Upon information and belief, during the interview Satin made multiple references to Defendants' organization as the recipient of the hair donation by Bryan to which Defendant Varney, made no attempt to correct Satin's mistake.

36.    On March 28, 2016, Plaintiff through counsel, sent a cease and desist letter. . . .to Defendants detailing the actual confusion and harm to Plaintiff from Defendants actions resulting from the similarity of the Registered Marks with Defendants' name and Service Mark "Wigs 4 Kids" as it relates to identical services.

37.    Thereafter, Defendants refused to halt the use and promotion of their infringing Service Mark in connection with the identical goods and services, and continues to solicit donations, offer, advertise, promote such goods and services under their Service Mark as of the date of filing of this Complaint. (as shown in Exhibit I).

(Pl. Complaint, Dkt. 1, at 6-7.)  Based on these allegations, Plaintiff further contents that "[Plaintiff] was confronted with a minor potential infringer that, until 2016, seemed to be honoring its word that it was strictly limiting itself to one geographic area - Michigan.  In 2016. . . .it came to [Plaintiff's] attention - as the result of [Defendant] misrepresenting itself to a national media source, following an instance of actual confusion - that [Defendant] was both not limiting itself to Michigan, and fomenting confusion over important donations."  (Pl. Rsp. Motion to Dismiss; Dkt. 22 at 20.)

Plaintiff's allegations are sufficient at this stage in the pleadings to state a claim that the change in 2016, brought the two companies more squarely into competition.  Plaintiff's contact with Defendant at various times prior to 2016 could be efforts to address activity Plaintiff deemed to be infringing without immediately resorting to litigation and escalating

the situation. Moreover as alleged, Plaintiff describes escalating behavior, on the part of Defendants, culminating in a national interview where Defendant escalated the confusion between the companies. Defendants' assertion that the facts surrounding the Satin interview are different than what is portrayed in Plaintiff's complaint, cannot be considered at this stage of the proceedings. On facts that the actions in 2016 precipitated the infringement , none of the time-barred defenses apply. The doctrine of laches will not apply, nor would the three year statute of limitation for the common law infringement claim, or the six year statute of limitations for the Michigan Consumer Protection Act apply. As presented in Plaintiff's complaint, Plaintiff states claims that are not time-barred.

### 4. Doctrine of Unclean Hands Bars Injunctive Relief

Defendants argues that Plaintiff's claims fail under the doctrine of unclean hands. The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue and to the other party's detriment. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach.Co.*, 324 U.S. 806, 814 (1945). "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation" of the unclean hands doctrine. *Id.* at 815. According to Defendant, "Plaintiff only applied for a character trademark for the purpose of forcing Defendant [ ] out of its long-established Michigan territory." (Dkt. 19, at 29.)

The Court recognizes the inconsistency Defendant highlights in Plaintiff's argument as pled. On the one hand Plaintiff claims to hold all common law rights in the "Wigs For Kids" trademark. (Pl. Complaint ¶42, Dkt. 1, at 8; "Plaintiff is the owner of the Registered

Marks and all common law rights in the "Wigs For Kids" trademark.")  However, Plaintiff's argument addressing progressive encroachment suggests there does exist a territory within which Defendant might have operated, namely Michigan, without triggering Plaintiff's enforcement of that right.  Nonetheless, the two facts can co-exist and do not create a clear case of unclean hands.  The Sixth Circuit has stated, "[f]raud or unclean hands are not to be lightly inferred.  They must be established by 'clear, unequivocal and convincing' evidence."  *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F>2d 365, 371 (6th Cir. 1977)(quoting *Shnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 392 (6th Cir. 1974)).  Additional facts are necessary to reach this conclusion and they are not part of the record this Court considers for a motion to dismiss.  Accordingly, the Court holds based on the facts pled, there are insufficient facts for Defendant's unclean hands defense as a valid basis for a motion to dismiss.

### B. Four Counts

Since Defendants' affirmative defenses are insufficient at this stage of the proceedings, the Court now examines the four counts to be certain Plaintiff has sufficiently stated claims for relief.  Plaintiff must have pled sufficient facts to meet all the necessary elements for each count in order to proceed.

### 1. Trademark Infringement under 15 U.S.C. §1114 of the Lanham Act

Plaintiff's complaint alleges Defendant violated Section 32 of the Lanham Act, 15 U.S.C. §1114.  The Lanham Act provides uniform, comprehensive federal law to govern questions of registered trademarks used in and affecting interstate commerce.  "A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the

alleged infringing trademark is likely to cause confusion among consumers." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). The touchstone of liability under §1114 is the last factor, whether the defendant's use of the disputed mark is likely to cause confusion. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). When determining whether a likelihood of confusion exists, the Court examines and weighs eight fact-intensive factors, called the *Frisch* factors. *See, e.g., Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 548 (6th Cir. 2005).

As pled, Plaintiff has alleged that it owns a trademark, that Defendant has infringed on that mark without authorization, and that the infringing mark has already caused several instances of confusion. The first confusion point when the potential donor made a mistaken donation in September 2012. (Dkt. 1, at 6.) Second, when the media surrounding Bryan's hair donation wrongly identified Defendant as the recipient. These allegations are sufficient at this stage in the pleadings to state a claim for trademark infringement. Therefore Defendant's Motion to Dismiss Count One for trademark infringement under 15 U.S.C. § 1114(1) of the Lanham Act is denied.

### 2. Federal Unfair Competition under 15 U.S.C. §1125(a) of the Lanham Act

Plaintiff's second count is for unfair competition under the Lanham Act. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> (1) Any person who, on or in connection with any goods or services. . . .uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person without another person,

or as to the origin, sponsorship, or approval of his or her goods, servies, or commercial activities by another person, or

(B) in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Sixth Circuit uses the same test to decide whether there has been trademark infringement, unfair competition or false designation of origin: the likelihood of confusion between the two marks. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)(citing *Two Pesos v. Taco Cabana,* 505 U.S. 763, 780 (1992)).

Plaintiff's complaint alleges that the infringing materials has already caused and continues to cause confusion. Further, Plaintiff's complaint alleges "Defendants have advertised and utilized the Registered Marks without Plaintiff's permission, with the intent to create an association and affiliation with Plaintiff and to trade-off the goodwill of the Registered Marks." (Pl. Complaint ¶ 52, Dkt. 1, at 9.) The Court holds that as pled the facts support Plaintiff's claim for unfair competition.

### 3. Trademark infringement/unfair competition under Michigan common law

Because Plaintiff's common law infringement, and unfair competition claims are analyzed similarly to an infringement action brought under the Lanham Act, this Court denies Defendant's motion to dismiss this claim for the same reasons outlined in denying Defendant's motion to dismiss the infringement action under the Lanham Act.

### 4. Unfair and deceptive trade practices under MCL §445.901-922 of the Michigan Consumer Protection Act

The Michigan Consumer Protection Act ("MCPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L. §445.903(1). The MCPA defines "trade or commerce" as "the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property." M.C.L. §445.902(d).

Defendants' motion to dismiss argues "the MCPA does not apply to transactions intended primarily for business or commercial, rather than personal, purposes." (D. Motion to Dismiss, Dkt. 19, at 30)(citing *Zine v. Chrysler Corp.*, 236 Mich.App. 261, 271 (1999)). "While it is true that the legislature used the word 'person' to describe who may be plaintiff as well as who may be a defendant, it is also true that had the legislature intended to allow only individuals to sue under the MCPA, it could have easily used the term 'individual' to limit the potential plaintiffs under M.C.L. §445.911(1) and (2). . . .the Court concludes that business competitors have standing under the MCPA because it must presume that the legislature intended the meaning expressed in the statute." *PFlorists' Transworld Delivery, Inc. v. LFleurop-Interflora*, 261 F.Supp.2d 837, 849 (E.D.M.I. April 10, 2003)(J. Hood)(citing *Action Auto Glass*, 134 F.Supp.2d at 903 (W.D.Mich. 2001).

The court in *Action Auto Glass* stated "[b]y its terms, the definition of 'trade or commerce' focuses on 'the conduct of a business providing [consumer] goods, property, or service,' rather than upon the occurrence of a specific transaction between the plaintiff and the defendant." *Action Auto Glass v. Auto Glass Specialists*, 134 F.Supp.2d 897, 901 (W.D.Mich. 2001)(citing M.C.L. §445.902(d)). "There is no requirement that consumer goods be sold or purchased in order to constitute 'trade and commerce.'" *Id.* It is enough

that a defendant "in the business of providing consumer goods or services" is alleged to have engaged in false or misleading advertising. *Id.*

The allegations relative to Plaintiff's claim under the MCPA is that the business in which the parties are engaged involve "trade and commerce;" and Defendants' actions constituted and comprised violations of the MPCA. The similarity in the Plaintiff's and Defendants' businesses suggest the potential for confusion for consumers. The issues arise as a result of the two companies' advertising and marketings and offering of goods and services of a personal nature. Thus Plaintiff has met its burden to state a claim in the pleading and Defendants' motion to dismiss this count is denied.

## IV. Conclusion

The Court, based on the above detailed reasons, DENIES Defendants' motion to dismiss.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 21, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 21, 2017, by electronic and/or ordinary mail.

<u>s/ Lisa C. Bartlett</u>
Case Manager